UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50595
_____

DEVLIN R. PALMER,

                                        Plaintiff-Appellee,

                        versus

GARY L. JOHNSON, ET AL.,

                                        Defendants;

BRYAN HARTNETT, Warden; OSCAR MENDOZA, Assistant Warden,

                                        Defendants-Appellants.

_____

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division
_____
October 19, 1999

Before GARWOOD, DUHÉ, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Bryan Hartnett and Oscar Mendoza appeal the district court's denial of their motion for summary judgment on the ground of qualified immunity. We affirm.

I

Devlin R. Palmer, an inmate of the Texas prison system, initiated the instant suit under 42 U.S.C. § 1983, alleging violations of his constitutional rights and seeking monetary damages and injunctive relief. Palmer's claims were based on events that transpired on October 29 and 30, 1996. According to

Palmer, at approximately 1:30 P.M. on October 29, Palmer and other members of his squad were reporting to the field for work after lunch, when they were stopped and lectured by a sergeant. As the squad resumed walking to the work site, some of its members made profane remarks about the lecture. The sergeant responded by halting the squad, drawing a firearm, and ordering the squad members to sit in the field. At approximately 3:00 P.M., Assistant Warden Mendoza arrived at the scene. Palmer explained to Mendoza why the squad had been stopped. Despite the fact that most of the inmates indicated that they wanted to go to work, Mendoza ordered them to remain seated in the field.

Warden Hartnett arrived at approximately 5:00 P.M. He ordered the forty-nine inmates to remain overnight in the field. These inmates were confined to an area measuring approximately twenty feet by thirty feet, bounded by poles and a string of lights. Hartnett directed the correctional officers overseeing the inmates to shoot anyone who attempted to leave the designated area of the field. When Palmer asked to leave the area to urinate and defecate, he was informed that he would have to do so within the confined space or he would be shot for attempting to escape.[1] Palmer also requested and was denied medication to treat insect bites. Palmer additionally asked that the nearby tractor engines be turned off because their noxious fumes disturbed him. The guards indicated that they could not shut the engines without the

_____

[1]Palmer elected to avoid defecating because he did not want to have to remain in close proximity to his waste.

warden's permission because they were being used to keep the bounded area lit throughout the night.

Palmer had been dressed for a day of work in the fields so he wore only a short-sleeved shirt. Because he was denied a jacket, blankets, or other means of keeping warm, Palmer became extremely cold as the temperature fell below fifty-nine degrees Fahrenheit. He and his fellow inmates tried to stay warm by huddling together, piling on top of one another, and digging holes in the dirt in an unsuccessful attempt to construct earthen walls to block the winds. Meanwhile, the guards wore jackets and stayed warm by lighting a fire and by periodically retreating to vehicles with running heaters. Both Hartnett and Mendoza were aware of these conditions and observed the inmates during the night.

At approximately 5:30 A.M. on October 30, each inmate was provided a meal consisting of milk, cereal, and a peanut butter and jelly sandwich.[2] Soon after, Warden Hartnett informed the inmates that, if they refused to go to work, they would be forced to remain outside for another night to "freeze again." Palmer and forty-six of the other squad members then went to work until approximately 11:30 A.M., when they returned to their unit for lunch.

Soon after he filed his complaint, Palmer moved for partial summary judgment on the issue of liability. The defendants asserted the defense of qualified immunity in their answer. The defendants then moved for summary judgment based on the Eleventh

---

[2]The parties dispute whether the inmates received dinner on the evening of October 29.

Amendment and the doctrine of qualified immunity. The defendants acknowledged the occurrence of the "sleep-out" and did not deny any of Palmer's specific allegations regarding the conditions of his confinement. According to Warden Hartnett, the sleep-out was not punitive but was an administrative measure intended to gain control of unruly inmates.

The magistrate judge recommended dismissing with prejudice Palmer's claims against all of the defendants in their official capacity and against defendant Gary L. Johnson in his individual capacity. The magistrate judge concluded that defendants Hartnett and Mendoza were not entitled to qualified immunity and recommended that the district court issue a partial summary judgment granting declaratory and injunctive relief against Hartnett and Mendoza in their individual capacities and allow Palmer's claims against them for monetary damages to proceed to trial.

The district court accepted the magistrate judge's recommendations, granting in part and denying in part both Palmer's summary judgment motion and the defendants' summary judgment motion. The district court dismissed with prejudice all of Palmer's claims against Johnson as well as his claims against Hartnett and Mendoza in their official capacities. The district court found Hartnett and Mendoza to be liable in their individual capacities for violating Palmer's rights under the Eighth Amendment and enjoined them from forcing Palmer to endure any future sleep-outs without adequate clothing or shelter. The district court ordered Palmer's claims for monetary damages against Hartnett and

4

Mendoza in their individual capacities to proceed to trial.

Pursuant to Federal Rule of Civil Procedure 59(e), Hartnett and Mendoza moved to alter or amend the judgment or for reconsideration or in the alternative for leave to file a supplemental motion for summary judgment. The magistrate judge recommended the denial of the motion. The district court accepted the magistrate judge's recommendation and denied the defendants' motion, leaving its previous decision intact. Hartnett and Mendoza then filed a notice of interlocutory appeal, advancing their claim of entitlement to the defense of qualified immunity and challenging the magistrate judge's recommendations, the district court's partial grant of summary judgment and injunctive relief in favor of Palmer, and the district court's denial of their motion for reconsideration.

II

A

We first consider our jurisdiction to consider the merits of this interlocutory appeal. Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291. Under the collateral order doctrine, however, a district court's denial of qualified immunity on a motion for summary judgment is immediately appealable if it is based on a conclusion of law. *See Johnson v. Jones*, 515 U.S. 304, 115 S. Ct. 2151 (1995); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S. Ct. 2806 (1985). Such orders are not appealable if they are based on a claim regarding the sufficiency

5

of the evidence.  *See Naylor v. State of Louisiana, Dep't of Corrections*, 123 F.3d 855, 857 (5th Cir. 1997) (per curiam).

> Thus, orders denying qualified immunity are immediately appealable only if they are predicated on conclusions of law, and not if a genuine issue of material fact precludes summary judgment on the question of qualified immunity.  Stated another way, we have jurisdiction over law-based denials of qualified immunity, but do not have jurisdiction over a genuine-issue-of-fact-based denial of qualified immunity.

*Id.; see Johnson*, 515 U.S. at 313, 115 S. Ct. at 2156 (holding that district court's summary judgment order denying qualified immunity is not immediately appealable when the decision "determines only a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial").  Therefore, if the district court concludes that the summary judgment record raises a genuine issue of material fact with respect to whether the defense of qualified immunity is applicable, then that decision is not immediately appealable under the collateral order doctrine.  *See Petta v. Rivera*, 143 F.3d 895, 898 (5th Cir. 1998).

In this case, the district court's summary judgment decision addressed both qualified immunity and liability.  The district court's denial of qualified immunity turned on its conclusion that the alleged conduct of Hartnett and Mendoza violated Palmer's constitutional rights and was objectively unreasonable.  To the extent this determination involves a question of law, as opposed to an assessment of the facts established by or inferable from the evidence, we have jurisdiction to review the denial of defendant's motion for summary judgment on the basis of qualified immunity; but on this interlocutory appeal we do not review in this connection

6

the district court's assessment of what facts are established by or inferable from the evidence. Nor do we have jurisdiction to review the district court's grant of Palmer's motion for summary judgment holding that defendants are liable for violating his constitutional rights and are not entitled to qualified immunity.

B

The doctrine of qualified immunity shields a state official from personal liability for damages under 42 U.S.C. § 1983 when the official's exercise of discretionary authority results in a violation of an individual's federal constitutional or statutory rights, "unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997). The bifurcated test for qualified immunity asks whether the plaintiff has alleged a violation of a clearly established right and, if so, whether the defendant's conduct was objectively unreasonable. *See Hare v. City of Corinth*, 135 F.2d 320, 325 (5th Cir. 1998). Currently applicable constitutional standards govern the first prong of the analysis. *See id.* at 326. The second prong involves "two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Id.* at 326 (citations omitted).

Palmer argues that Hartnett and Mendoza violated his rights

7

under the Eighth Amendment whereas the appellants argue that the conditions Palmer experienced did not rise to the level of a constitutional violation. Although the constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400 (1981), conditions of confinement "must not involve the wanton and unnecessary infliction of pain." *Id.* at 347, 101 S. Ct. at 2399. The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide "humane conditions of confinement," ensuring that "inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994).

The Supreme Court has held that an inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834, 114 S. Ct. at 1977 (citations omitted). Second, "a prison official must have a 'sufficiently culpable state of mind'" *Id.*, 114 S. Ct. at 1977. In prison conditions cases, that state of mind is one of deliberate indifference to inmate health or safety. *See id.*, 114 S. Ct. at 1977. "To establish deliberate indifference . . ., the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d

1022, 1025 (5th Cir. 1998).

Palmer claims that his overnight outdoor confinement without shelter, protective clothing, or acceptable means to dispose of his bodily waste deprived him of the "minimal civilized measures of life's necessities." The appellants attempt to downplay the degree of the claimed deprivation by deconstructing the elements of the sleep-out and focusing on its relatively brief duration. We agree that some aspects of the incident do not evince a constitutional violation. That Palmer may have missed one meal and may have endured irritating insect bites without immediate medical attention does not rise to the level of a cognizable constitutional injury. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976) (holding that deliberate indifference to a prisoner's *serious* medical needs constitutes an Eighth Amendment violation); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."); *Green v. Ferrell*, 801 F.2d 765, 770-71(5th Cir. 1986) (finding that the provision of only two nutritionally adequate meals daily does not violate the Eighth Amendment). Other deprivations resulting from the challenged conduct, however, are far more serious.

This court has observed that "certain prison conditions [are] so 'base, inhuman and barbaric' that they violate the Eighth Amendment." *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971). One such condition is "the deprivation of basic elements of hygiene." *Id.* Palmer claims that he was not allowed to use a bathroom during

9

the seventeen-hour outdoor confinement and was instead told that his only option was to urinate and defecate in the confined area that he shared with forty-eight other inmates. The appellants suggest that Palmer's experience was no different than that of many overnight campers and, relying on *Smith v. Copeland*, 87 F.3d 265 (8th Cir. 1996), argue that the lack of toilet facilities did not implicate constitutional concerns. In *Smith*, a pretrial detainee claimed that he was forced to endure raw sewage because an overflowed toilet in his cell was not cleaned for four days. The detainee did not dispute that he declined to flush the toilet or clean the mess. The *Smith* court acknowledged that exposure to raw sewage may constitute cruel and unusual punishment in some cases, but concluded that the totality of the circumstances in that case did not amount to a constitutional violation. *Id.* at 268-69. However persuasive *Smith* may be, it is unlike the case before us, which involves a complete deprivation of toilets for scores of inmates confined in the same small area. We find that these conditions constitute a "deprivation of basic elements of hygiene."

Also troubling is Palmer's claim that he was forced to withstand strong winds and cold without the protection afforded by jackets or blankets. "Prisoners have a right to protection from extreme cold." *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997); *see Murphy v. Walker*, 51 F.3d 714, 721 (7th Cir. 1995) (noting that a pretrial detainee has a right to adequate heat and shelter); *Beck v. Lynaugh*, 842 F.2d 759, 761 (5th Cir. 1988) (holding that a prisoner's allegations of exposure to the elements

10

during winter months stated a cause of action under the Eighth Amendment); *see also Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983) (per curiam) (finding that a plaintiff's statements that the defendant "intentionally subjected him to a cold, rainy, roach-infested facility and furnished him with inoperative scum-encrusted washing and toilet facilities sufficiently alleges a cause of action cognizable under 42 U.S.C. § 1983 and the eighth and fourteenth amendments"). Palmer claims that he and the other inmates were reduced to digging in the dirt to construct loose earthen walls as feeble wind barriers while their guards warmed themselves with jackets, a fire, and car heaters. Although the degree to which the temperature actually fell is relevant to a conclusive determination, Palmer's description of the incident suggests that his exposure to the elements may have risen to the level of a constitutional deprivation.

As the appellants emphasize, the challenged conduct lasted only seventeen hours. In addition to duration, however, we must consider the totality of the specific circumstances that constituted the conditions of Palmer's confinement, with particular regard for the manner in which some of those conditions had a mutually enforcing effect. *See Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327 (1991); *cf. Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) (observing that "most successful Eighth Amendment claims often involve allegations of cold in conjunction with other serious problems"); *McCray v. Burrell*, 516 F.2d 357,

11

365-68 (4th Cir. 1975) (finding Eighth Amendment violation where inmate was solitarily confined for forty-six hours in a cold cell with no clothing or blankets, no running water or personal hygiene items, and a toilet consisting of an excrement-encrusted hole in the floor).   We find that the totality of the specific circumstances presented by Palmer's claim--his overnight outdoor confinement with no shelter, jacket, blanket, or source of heat as the temperature dropped and the wind blew along with the total lack of bathroom facilities for forty-nine inmates sharing a small bounded area--constituted a denial of "'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (citation omitted).

Having demonstrated a sufficiently serious deprivation, Palmer must establish that Hartnett and Mendoza acted with deliberate indifference to his health or safety.   According to Palmer, Hartnett ordered the sleep-out and both he and Mendoza were present during the evening.   Palmer also asserts that, on the morning of October 30, Warden Hartnett threatened another night outdoors to "freeze again" if they refused to work.   This summary judgment evidence suffices for the requisite showing of deliberate indifference on the part of the appellants.   Thus, for purposes of the qualified immunity analysis, Palmer has demonstrated a violation of his clearly established rights under the Eighth Amendment.

The appellants contend that even if their conduct violated Palmer's constitutional rights, they did not act unreasonably in

light of the circumstances and the law as established at the time of the sleep-out.  We disagree.  When this incident occurred, an inmate's right to "humane conditions of confinement" and the prison official's concomitant duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care . . . ." was well-established.  *See,* e.g., *id.,* 114 S. Ct. at 1976.  More specifically, this court had already made it clear that a prison official may not subject inmates to significantly cold temperatures or deprive them of the basic elements of hygiene.  *See, e.g., Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457 (5th Cir. 1983) (per curiam); *Daigre v.* Maggio, 719 F.2d 1311, 1312 (5th Cir. 1983) ("We concluded over a decade ago that the eighth amendment forbids deprivation of the basic elements of hygiene."); *Novak v. Beto*, 453 F.2d 661, 665 (5th Cir. 1971); *cf. Chandler v. Baird*, 926 F.2d 1057, 1065-66 (11th Cir. 1991) ("[T]he right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation was well established in 1986.").  We are confident that, given the law at the time and the circumstances of this case as found by the district court, no reasonable prison official would have thought it objectively acceptable to herd forty-nine inmates into a small outdoor space, deprive them of any protection from excessive cold and wind, and provide no sanitary means of disposing of their bodily waste for over seventeen hours.  While this to a large extent depends on just how low the temperature was and just what the wind chill factor was and how such cold would affect those

13

situated as were the prisoners, these are essentially factual considerations that were at least implicitly determined by the district court adversely to defendants' motion for summary judgment and are unreviewable on this interlocutory appeal. We therefore hold that no error of law has been demonstrated in the denial of defendants' motion for summary judgment on the basis of qualified immunity, and in that respect the denial of defendants' motion is AFFIRMED. To the extent that defendants challenge either the district court's assessment of the facts established by or inferable from the evidence or the grant of summary judgment in favor of Palmer on liability (including qualified immunity), the appeal is DISMISSED.

## III.

Accordingly, we AFFIRM in part; DISMISS the appeal in part; and REMAND the cause for further proceedings.

14