# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 15, 2012

No. 10-40591

Lyle W. Cayce
Clerk

GENE A. MITCHELL,

Plaintiff–Appellant

v.

NATHANIEL QUARTERMAN; WARDEN DEBBIE RUTHVEN,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Texas
No. 6:09-CV-404

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Gene Mitchell, a male inmate in the custody of the Texas Department of Criminal Justice ("TDCJ"), filed a *pro se* civil rights complaint under 42 U.S.C. § 1983 against Nathaniel Quarterman, the Director of the TDCJ, and Debbie Ruthven, the Warden of the Billy Moore Unit—a correctional facility in Overton, Texas, where Mitchell was housed and which is run by the Corrections Corporation of America ("CCA"). Mitchell's complaint stems from the Billy Moore Unit's policy of permitting female guards to monitor male inmates while

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40591

the inmates shower and use the restroom. Mitchell alleges that allowing female officers to view him nude violates his rights under the First, Fourth, Eighth, and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act (RLUIPA). He seeks injunctive relief and monetary damages.

Adopting the magistrate judge's recommendation, the district court rejected Mitchell's § 1983 claim and granted summary judgment for the TDCJ Defendants, Quarterman and Ruthven. Mitchell appeals that judgment. We review the district court's order granting summary judgment de novo. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011) (internal quotation marks omitted). For the reasons stated below, we affirm the district court's grant of summary judgment.

I.

As an initial matter, none of the issues on appeal relates to Quarterman. The magistrate judge granted Mitchell's motion to dismiss Quarterman, which asserted that Quarteman had retired and that his retirement satisfied the purposes of Mitchell's suit. Mitchell's briefs on appeal do not address or challenge Quarterman's dismissal with prejudice, which was adopted by the district court. Mitchell has therefore abandoned any challenge to the granting of his own motion. *See* Fed. R. App. P. 28(a)(9)(A); *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993); *Brinkman v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

To the extent that Mitchell asserts an equal protection claim, he does so for the first time on appeal, and we will not consider it. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999); *Burch v. Coca-Cola Co.*,

2

No. 10-40591

119 F.3d 305, 319 (5th Cir. 1997). Furthermore, Mitchell's conclusory statements regarding the magistrate judge's alleged prejudice and bias are not sufficiently briefed or supported by facts in the record for us to consider them. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

Mitchell's claims against Ruthven in her official capacity, meanwhile, are barred by the Eleventh Amendment. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("[T]he Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity."). We agree with Ruthven's argument that she should not be held personally responsible for any constitutional violation because she has not actually seen Mitchell nude. All that is left for our consideration is Ruthven's potential liability under § 1983 as a policymaker at the Billy Moore Unit. *See Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Supervisory liability [under § 1983 ] exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation") (internal quotation marks omitted).

## II.

The central claim of Mitchell's § 1983 complaint is that the Billy Moore Unit's cross-sex monitoring policy violates his constitutional rights to bodily privacy and to free exercise of religion. Mitchell's complaint thereby invokes the First, Fourth, and Fourteenth Amendments. Mitchell contends there is "no possible penological justification" for the refusal to change the policy and that the prison could have accommodated his right to privacy and his religious tenet of modesty by including "parcel doors" on the showers, as he claims is standard in other prisons. He also asserts that there is "no shortage of male guards that could be stationed in areas with observation view of the inmate showers during

No. 10-40591

the time showers are in use."

Although imprisonment necessarily limits a prisoner's constitutional rights, the Constitution does not entirely abandon the prisoner at the prison gate. *See Turner v. Safley*, 482 U.S. 78, 84 (1987). This Court has recognized that prisoners have a minimal right to bodily privacy. *Oliver*, 276 F.3d at 744–45. We have also recognized that "prisoners must be accorded 'reasonable opportunities' to exercise their religious freedom guaranteed under the First Amendment." *Mumin v. Phelps*, 857 F.2d 1055, 1056 (5th Cir. 1988) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). Inside prison walls, of course, the Constitution may tolerate a regulation restricting a constitutional right that, outside prison walls, would be intolerable. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Still, it is well-settled that a restrictive prison regulation is permissible only if it is "reasonably related to legitimate penological interests," *see Turner*, 482 U.S. at 89, and is not "an exaggerated response to those objectives," *see id.* at 93.

In *Turner v. Safley*, the Supreme Court set forth four factors "relevant in determining the reasonableness" of a restrictive prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate government interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) "whether the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* at 89–90 (internal quotation marks omitted).

This Court has consistently held that there is a reasonable relation between prison cross-sex monitoring policies and the legitimate penological interests of prison safety and equal employment opportunity. *See, e.g.*, *Oliver*, 276 F.3d at 743–47. Yet, Mitchell has presented no evidence to show that prison

4

No. 10-40591

safety and equal employment are not legitimate state interests or that they bear no rational connection to the state's policy of allowing female guards to monitor male prisoners while showering. Nor has he shown, beyond mere allegations, that allowing only male guards to view the prisoners naked would not create "the ripple effect of forcing [TDCJ] to reassign a high percentage of its prison staff." *See Oliver*, 276 F3.d at 746. Finally, Mitchell has presented no evidence to show that his proposed alternative—installing parcel doors in the showers to shield prisoners' mid-sections—would come at only a *de minimis* cost. *See id.* Because there is no genuine dispute of material fact, summary judgment as a matter of law was appropriate.

## III.

Mitchell also argues that the cross-sex monitoring policy is cruel and unusual punishment in violation of the Eighth Amendment. "[A]n inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999). First, the deprivation alleged must be sufficiently serious from an objective point of view. *Id.* That is, the defendant prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, the plaintiff prisoner must show that the prison official had a sufficiently culpable state of mind—which, in a prison condition case, is one of deliberate indifference to inmate health or safety. *Id.*

Mitchell has not met either prong. His primary argument—that, because he is a human being, he should not be forced to shower and use the restroom in front of the opposite sex—does not allege a deprivation of a life necessity. Additionally, he does not set forth sufficient evidence that Ruthven acted with deliberate indifference to his rights and needs. The district court did not err in granting summary judgment on his Eighth Amendment claim.

No. 10-40591

IV.

Lastly, Mitchell is not entitled to relief under RLUIPA. His complaint sought compensatory and punitive damages, as well as declaratory and injunctive relief. Because he has been transferred from the Billy Moore Unit, and because there is no indication that he will return to that facility, his claims for declaratory and injunctive relief are moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Furthermore, this Court has held that RLUIPA does not allow for individual-capacity liability for damages and that, even if RLUIPA did allow such damages, they would be barred by sovereign immunity. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 321–22 (5th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 1651 (2011).

AFFIRMED.