**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4539
_____

CARL T. STEWART, JR.,
a/k/a CARL BURTON,
                                        Appellant

v.

DAVID A. VARANO; DEPUTY SUPERINTENDENT RONDA M. ELLETT;
ROBERT MCMILLAN; UM THOMAS MCQINLEY; C/O  EYSTER;
CAPTAIN JEFFREY MADDEN; G. MILLER; LT. W. P. MILLER;
JOHN OR JANE DOE (SIGNING OF REQUEST SLIP DATED 1-9-10);
MS.  MCCARTNEY, Health Care Coordinator; L.S. KERNS-BARR;
LINDA CHISMAR, CCPM; MICHAEL CORBACIO, CAM II;
CHARLES CUSTER, UM; ROBERT B. MACINTYRE,
Chief Hearing Examiner; DORINA VARNER,
Chief Grievance Officer; SECRETARY DEPARTMENT OF CORRECTIONS, et al.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1-10-cv-01701)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 26, 2015
Before:  RENDELL, GREENAWAY, JR. and SCIRICA, Circuit Judges

(Opinion filed:  February 9, 2015)
_____

OPINION[*]
_____

PER CURIAM

Pro se litigant Carl Stewart appeals the District Court's dismissal of his complaint alleging constitutional violations at the State Correctional Institution at Coal Township (SCI-Coal Township) in Pennsylvania. For the reasons set forth below, we will affirm the District Court's judgment.

On January 1, 2010, Stewart was incarcerated at SCI-Coal Township. He woke up around 2:00 a.m. and headed toward the bathroom to urinate. Corrections Officer Eyster stopped him, saying that he would have to wait until after the 2:00 inmate count was completed to use the bathroom. Stewart informed Eyster that he took a medication that caused him to urinate frequently, and that he needed to urinate immediately. Eyster repeated that he would have to wait until after the count and ordered him to return to his bunk. Stewart complied but threatened to file a grievance against Eyster. The count lasted 15 to 20 minutes, during which time Stewart urinated on himself and in a "squeeze cheese bottle." Afterward, Eyster issued Stewart a misconduct for refusing to obey an order and for presence in an unauthorized area.[1] The hearing examiner upheld these

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] A disciplinary hearing report submitted by Stewart as an exhibit to his complaint clarifies the origins of these charges. Eyster said that he ordered Stewart to return to his bunk several times before he complied, which was the source of the refusal-to-obey charge. Similarly, Eyster explained that once Stewart was ordered to return to his bunk

2

charges, and Stewart was sentenced to 30 days of cell restriction. The misconduct also disqualified him from a pre-release program in which he had been slated to participate. Stewart's administrative appeals were denied.

Stewart filed this complaint pursuant to 42 U.S.C. § 1983 on July 30, 2010, alleging violations of his First, Eighth, and Fourteenth Amendment rights. He named Eyster and numerous other prison employees as defendants. The Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint, and the Magistrate Judge recommended granting that motion. The District Court agreed and dismissed the complaint with prejudice. Stewart filed a timely notice of appeal.[2] We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. See Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

First, Stewart argued that the disciplinary proceedings surrounding the misconduct violated his due process rights. The District Court reasoned that this argument was barred by the Heck doctrine, which prohibits a prisoner from using a civil suit to attack the validity or length of his confinement without first demonstrating that his conviction or sentence has been otherwise invalidated. See Heck v. Humphrey, 512 U.S. 477 (1994); see also Edwards v. Balisok, 520 U.S. 641 (1997). As Stewart rightly contended in his

---

and refused to do so, he was in an unauthorized area.

[2] Stewart's notice of appeal was timely pursuant to the District Court's award of Federal Rule of Appellate Procedure 4(a)(5) relief.

3

brief before this Court, the Heck doctrine is inapplicable because Stewart did not question the validity or length of his confinement in this complaint. Nonetheless, his due process argument fails because it does not implicate a liberty interest; thirty days of cell restriction and disqualification from a pre-release program do not represent the "atypical and significant hardship on [an] inmate in relation to the ordinary incidents of prison life" that is necessary to state a due process claim in this context. Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Asquith v. Dep't of Corr., 186 F.3d 407, 412 (3d Cir. 1999) (removal from community release program did not implicate a protected liberty interest under Sandin).

Next, Stewart claimed that Eyster's refusal to grant him access to the bathroom during count time represented an unconstitutional deprivation of life's basic necessities, thereby violating the Eighth Amendment. To successfully state such a claim, a plaintiff must allege that the prison condition in question — here, a brief lack of toilet access — was sufficiently serious. See Young v. Quinlan, 960 F.2d 351, 359-60 (3d Cir. 1992). Stewart's complaint does not meet this standard, and his reliance on our decision in Young only serves to highlight the inadequacy. In Young, the plaintiff was housed in a cell without a toilet for four days; allowed to leave his cell only once to urinate or defecate; not provided with toilet paper or permitted to wash his hands before eating, despite suffering bouts of diarrhea; not provided water to drink but instead told to drink his own urine; and threatened to be chained to a steel slab if he complained. These

4

allegations, we held, were objectively serious enough to rise to the level of a constitutional violation.  See id. at 365.  The fact that Stewart had to wait 15 minutes to access a toilet does not.  See Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) (momentary deprivation of right to use the bathroom did not offend the Constitution); see also Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992) (housing inmates in cells without toilets did not violate Eighth Amendment).[3]

To the extent Stewart argued that Appellees violated the Eighth Amendment by demonstrating deliberate indifference to his serious medical need, this too fails.  The temporary, everyday need to urinate does not constitute a "serious medical need" in this context.  Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (a serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention").  Moreover, Stewart has not sufficiently stated the subjective component of an Eighth Amendment claim:  that the prison official acted with deliberate indifference to the wanton infliction of pain.  See Estelle v. Gamble, 429 U.S. 97, 105-06

---

[3]  The relevant cases that Stewart cited to argue the contrary are inapposite, because, among other critical differences, they involved deprivations of toilet access over much longer periods of time.  See, e.g., Hope v. Pelzer, 536 U.S. 730, 734-746 (2002) (inmate who was handcuffed to hitching post and made to stand shirtless in the sun for seven hours while deprived of any water or a toilet, could demonstrate Eighth Amendment violation); Palmer v. Johnson, 193 F.3d 346, 352-54 (5th Cir. 1999) (inmate required to "sleep-out" for seventeen hours with forty-eight other inmates, and forced to openly urinate and defecate in an area measuring twenty feet by thirty feet, stated Eighth Amendment claim).

(1994); Farmer v. Brennan, 511 U.S. 825, 834 (1994).  There is no indication here that requiring Stewart to wait 15 minutes to use a bathroom, in accordance with the facility's standard procedures for inmate counts, demonstrated deliberate indifference on the part of either Appellee to an "unnecessary and wanton infliction of pain" or the like.  See id.

Stewart's argument that this incident violated the Equal Protection Clause is similarly meritless, because, among other deficiencies, his complaint did not describe in any detail other inmates who were permitted to use the bathroom during the count while he was not.[4]  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 424 (3d Cir. 2000) ("Where there is no discrimination, there is no equal protection violation.").  Similarly, he has not alleged any intentionally different treatment that was so exceptionally arbitrary that it could state a "class of one" equal protection claim.  See Eichenlaub v. Township of Indiana, 385 F.3d 274, 286 (3d Cir. 2004).

Lastly, Stewart argued that Eyster issued the misconduct in retaliation for Stewart's threat to file a grievance against him, thereby violating the First Amendment.

---

[4]  Indeed, the exhibits attached to the complaint indicate that as a matter of policy, bathrooms are routinely cleared before counts are conducted.  Presumably that is why Stewart was not permitted to use the bathroom at the time in question.  In his complaint, Stewart makes clear that he saw inmates exiting the bathroom when he tried to enter it, and that they did so in the company of (and likely at the behest of) a Corrections Officer. "[A]s I was arriving [at the bathroom,] Defendant C/O Eyster asked where I was going[.] I stated I have to use the bathroom real bad[,] I take a water pill for my blood pressure medication[,] it'll be real quick.  He stated I will have to wait until after count. [T]hat's when about 5 or 6 inmates came out of the bathroom along with C/O Crispell." [Emphasis added.]

To state a claim for retaliation, Stewart must allege facts sufficient to prove (1) that he was engaged in constitutionally protected conduct; (2) that he suffered an adverse action at the hands of prison officials, sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) that his protected activity was a motivating factor in the adverse action taken against him. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). Filing a grievance can be constitutionally protected conduct. See id. The District Court concluded that Stewart had not engaged in such conduct here, because he had not actually filed a grievance when Eyster issued the misconduct; he had merely threatened to do so. But that is in fact Stewart's allegation — that he was retaliated against for speaking, which did take place at the relevant moment. In any event, we conclude that under the circumstances presented here — where the complaint itself indicated that the misconduct finding alleged to be retaliatory rested on a sufficient evidentiary basis (see supra n.1) — Stewart's allegation did not state a viable claim under Rule 12(b)(6). See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (concluding that a misconduct based on "some evidence" of violation essentially "checkmated" litigant's retaliation claim); see also Farver v. Schwartz, 255 F.3d 473, 474 (8th Cir. 2001) (claim of retaliation based on issuance of misconduct was properly dismissed under Rule 12(b)(6) because the misconduct was supported by some evidence of violation).

7

We are satisfied that leave to amend this complaint would have been futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  Accordingly, we will affirm the judgment of the District Court.