NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1680
_____

JAMES FREEMAN,
Appellant

v.

OFFICER J. A. MILLER; NURSE TRAUTMAN; OFFICER
KAUFFMAN; SGT. ERLY; OFFICER MCDONALD; LT.GOOLER;
OFFICER HOOT; CAPTAIN MCCOY; OFFICER R. HENE; OFFICER
J. SEEDOR; OFFICER LYNN; K.K. DASCANI, Grievance Counselor;
OFFICER KNARR; MS. SHYLENSBURG; DAVIS; LT. SHIPE; LT. EVELAND
DR. WEISNER; SGT. BURNHEART; OFFICER PETTEROLF; NURSE
SHEPPERSON; LT. FAUST; CAPTAIN W. J. MILLER; LT. BURNS; LT.
MOWREY; SHALETSKY, Food Manager; L.S. KERNSBARR, Hearing Examiner;
MS. JELLEN, Mailroom Supervisor; MS. LACAVAGE; PA BOARD OF PROBATION
AND PAROLE; 3 UNKNOWN BOARD MEMBERS FOR THE MIDDLE DISTRICT
AT SCI COAL TOWNSHIP; JOHN AND JANE DOES; 3 UNKNOWN BOARD
MEMBERS FOR THE WESTERN DISTRICT FOR SCI CRESSON; MS. HAMM,
Hearing Examiner; JANE AND JOHN DOES AND 3 JANE DOES AND JOHN DOES
FOR SCI CRESSON; UNKNOWN PERSON WHO AMENDED POLICY JANE AND
JOHN DOE; JUDGE ROBERT B. SACAVAGE; MAGISTRATE JUDGE JOHN
EYEMBIC; DISTRICT ATTORNEY ROSINI; ASSISTANT DISTRICT ATTORNEY
A. MICHAEL TOOMEY; TROOPER KEVIN D. KEARNEY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 3-10-cv-01545)
District Judge: Honorable James M. Munley
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 3, 2015

Before: FUENTES, SHWARTZ and ROTH, Circuit Judges

_____

OPINION[*]

_____

PER CURIAM

James Freeman, pro se, appeals from an order of the District Court granting summary judgment against his claims under 42 U.S.C. § 1983. For the following reasons, we will affirm the District Court's judgment.

In pertinent part, Freeman's complaint alleged that Appellees—employees at SCI Coal Township, where Freeman was imprisoned—violated his Eighth Amendment rights by failing to protect him from the attack of his cell mate and subjecting him to unconstitutional conditions of confinement. Freeman originally brought several claims under § 1983 and state tort law against over 30 government employees and entities. In a series of dismissal and summary judgment orders, the District Court rejected all but these Eighth Amendment claims. On March 11, 2014, the District Court granted the remaining Defendants'[1] motion for summary judgment. Freeman timely appealed. He argues that factual issues implicated in these remaining claims necessitated trial.[2]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The remaining named defendants were: Correctional Officers J.A. Miller, Kauffman, J. Seedor, McDonald, Hoot, Henz and Fetterolf; Nurses Trautman and Shepperson; Sergeants Erdly and Burnhart; Lieutenants Gooler, Shipe, Faust, Burns, Mowrey, and Eveland; Captains McCoy and W. Miller; Grievance Coordinator K. K. Dascandi; Hearing Examiner Kerns-Barr; Ms. Hamm; Food Manager Shaletsky; Teacher Ms.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the District Court's grant of summary judgment. See Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009). Summary judgment is appropriate only when the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This occurs where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In this inquiry, we credit the evidence of the non-movant and draw all justifiable inferences in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**Failure to Protect**

In late August of 2009, Freeman was placed in restricted housing, where he shared a cell with inmate Eric Williams. According to Freeman, the two did not get along: they constantly argued and engaged in physical fights on at least two occasions. Both men requested new, separate cells. Williams told first- and second-shift correctional officers—including Appellees Knorr, J.A. Miller, Kaufman, Erdly, Burnhart, Burns,

Lascavage; and Mail Room Supervisor Jellen. Also remaining were multiple unnamed "John/Jane Doe" defendants. In its March 11, 2014 order, the District Court dismissed Lt. Shipe, Supervisor Jellen, and Nurse Marx as defendants, finding that no claims alleging their personal involvement remained or had been brought against them, and dismissed all John/Jane Does based on failure to timely identify them.

[2] Freeman does not appeal the earlier dismissal and summary judgment orders or take issue with the dismissal of Supervisor Jellen, Lt. Shipe, or the John/Jane Does.

McDonald, Gooler, Fetterolf, and Mowry—that he would stab Freeman if they did not grant that request. Sgt. Gooler allegedly told Williams that he would be issued a disciplinary citation if he did so, but the officers otherwise took no precautions against the threat, Freeman stated.

On September 6, 2009, Williams attacked Freeman, who appeared to be sleeping, with a weapon crafted from a sharpened eyeglass arm. Standing outside the cell, responding Officers Hoot and Henz and Captain McCoy ordered Williams to step away from Freeman and throw his weapon out of the cell; when he did so, the officers entered the cell and cuffed and removed Williams. Medical records reflect that Freeman sustained no cuts or bruises—the eyeglass shank failed to penetrate his shirt—and had only a "questionable" soft spot where he claimed to have head pain. Freeman argues that Appellees unconstitutionally failed to protect him by failing to both adequately respond to Williams' stabbing threat and timely end Williams' attack.

The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation omitted). Not every prisoner-inflicted injury, however, amounts to a constitutional violation. Id. at 834. To establish a failure-to-protect claim, a prisoner must show that: (1) he is "incarcerated under conditions posing a substantial risk of serious harm" and (2) prison officials acted with "deliberate indifference"—that is, they knew of and disregarded an excessive risk to his safety. See id. at 834, 837; see also Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012) (citations omitted) (noting failure-to-

4

protect § 1983 claim also requires showing that the official's deliberate indifference caused the prisoner harm). Merely negligent conduct is insufficient. See Farmer, 511 U.S. at 835. Prison officials should investigate each incident or threat of violence to determine if a request for protective custody is legitimate. See Young v. Quinlan, 960 F.2d 351, 363 n.23 (3d Cir. 1992). An official who knows of a risk to a prisoner can avert liability if he shows that he acted reasonably, even if injury still occurred. Beers-Capitol v. Whetzel, 256 F.3d 120, 132 (3d Cir. 2001) (citation omitted).

Regarding Appellees' response to Williams' threat, Freeman has not established a genuine factual dispute as to whether Appellees were deliberately indifferent to a substantial safety risk. See Fed. R. Civ. P. 56(a); Farmer, 511 U.S. at 834. Freeman, at 6'3" and approximately 230 pounds, was much larger than Williams, who was 5'7" and 140 pounds, and admitted that he would not have said that he was afraid of Williams prior to the stabbing incident. There is no evidence that their alleged prior physical altercations resulted in any injury. In short, there was nothing to suggest that Williams, prior to the stabbing incident, posed a "pervasive risk of harm" to Freeman. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).

Crediting Freeman's evidence, Williams directly informed guards of his plans to stab Freeman before Williams attacked him. However, Freeman never requested protective custody in response to this threat and admittedly lacked credible fear of an attack from Williams. See Young, 960 F.2d at 363 n.23. Further, Sgt. Gooler's threat of disciplinary action against Williams if he stabbed Freeman, even if ultimately

5

unsuccessful in preventing the attack, was reasonable under the circumstances. See

Beers-Capitol, 256 F.3d at 132. Freeman points to no evidence that the officers were

aware that Williams had a weapon until he displayed it during the attack. Moreover,

Williams' armed assault while Freeman was allegedly unconscious in fact inflicted little

to no measurable injury on Freeman. This underscores the lack of a "substantial risk of

serious harm" that Williams posed to Freeman. See Farmer, 511 U.S at 834; Bistrian,

696 F.3d at 367. The correctional officers were, at most, negligent in failing to take more

forceful anticipatory action such as rehousing the inmates based on an unlikely threat.

See Farmer, 511 U.S at 835.

Freeman argues that the District Court ignored an affidavit by Williams declaring

that his threats received the response, "Go ahead and stab him."[3] Williams' vague and

unspecified statements based potentially on hearsay, see Fed. R. Evid. 801, are not

sufficiently probative to create a genuine factual issue. See N.J. Tpk. Auth. v. PPG

Indus., Inc., 197 F.3d 96, 112 (3d Cir. 1999) (citations omitted). Even assuming that

officers did taunt Williams, there is insufficient evidence showing that his threat appeared

credible enough that the officers were deliberately indifferent to a substantial risk to

---

[3] Williams claimed that Officer J.A. Miller in particular made that statement, along with promising him extra food trays and favorable treatment from the hearing examiner if he stabbed Freeman. However, in a March 4, 2013 order, the District Court dismissed his claim against Officer Miller for failure to properly exhaust it through the prison grievance process. See 42 U.S.C. § 1997e(a). The exhaustion requirement is explained in greater detail below. Freeman neither appeals the March 4, 2013 order nor argues that the District Court erred in dismissing as non-exhausted the allegations against Miller.

Freeman by not taking it seriously.  See Farmer, 511 U.S. at 835; Young, 960 F.2d at 363 n.23.

Freeman's second claim was, in essence, that Captain McCoy and Officers Hoot and Henz unconstitutionally failed to protect him by talking Williams into surrender rather than forcefully removing him from Freeman.  Although the District Court entered summary judgment against this claim, it previously held in its March 4, 2013 order that Freeman had failed to administratively exhaust it.  We may affirm on any grounds supported by the record.  United States v. Agnew, 407 F.3d 193, 196 (3d Cir. 2005).

The Prisoner Litigation Reform Act of 1995 requires a prisoner to exhaust claims based on prison conditions by raising them in any available administrative grievance process before seeking redress in federal court.  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  The exhaustion requirement applies on a claim-by-claim basis.  See Jones v. Bock, 549 U.S. 199, 223 (2007).  On his grievance form, Freeman complained only of prison guards' failure to prevent Williams' attack by adequately responding to his stabbing threat; he made no allegations concerning any improper response or delay in coming to his rescue.  Freeman failed to exhaust his administrative remedies for this claim, mandating its dismissal.  See Booth v. Churner, 532 U.S. 731, 739 (2001).  Accordingly, the District Court properly denied both failure-to-protect claims.

**<u>Unconstitutional Conditions of Confinement</u>**

In February 2010, after admittedly displaying a noose made with bed sheets and threatening suicide, Freeman was placed in a "hard" cell used for suicidal inmates. He was denied a desk, seat, showers, a mattress, soap, recreation, mail, and toilet paper, and was permitted to wear only underwear and a suicide smock for approximately seven days. Due to his prolonged exposure to the allegedly low cell temperature, Freeman claimed that he contracted a cold, suffered a massive headache, and his feet went numb, started burning, and suffered permanent nerve damage. He alleged that prison staff mostly ignored his pleas for relief from the cold, failing to give him a "blueberry" blanket as the psychiatrist authorized and delaying two days in responding to his requests for medical attention, which then proved largely ineffective in treating his pain.

Placing an inmate in restricted housing does not violate the Eighth Amendment "as long as the conditions of confinement are not foul, inhuman or totally without penological justification." See Young, 960 F.2d at 364. Conditions of confinement are unconstitutional where a prisoner is denied the "minimal civilized measure of life's necessities" through prison officials' deliberate indifference to a condition posing a substantial risk of serious harm. Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Only "extreme deprivations" meet this standard. Hudson v. McMillian, 503 U.S. 1, 9 (1992). In particular, while a prisoner is entitled to adequate medical care, see Farmer, 511 U.S. at 832, if a prisoner is receiving physician attention,

8

"a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Even crediting his factual allegations, a reasonable factfinder could not conclude that Freeman suffered an Eighth Amendment deprivation. See Celotex Corp., 477 U.S. at 322. Placing Freeman in the hard cell and removing items he could use to either harm himself or block guards from observing his condition was a reasonable response to his suicide threat and the need to deter such behavior. See Young, 960 F.2d at 364. His stay in the hard cell did not violate the Eighth Amendment so long as the conditions of his confinement during that period were also constitutional. See id. Freeman has not shown otherwise.

The alleged delay in medical care did not amount to an unconstitutional deprivation. Freeman admittedly was treated by Dr. Weisner two days into his stay in the hard cell. Dr. Weisner provided him Tylenol and, later, Elavil—which Freeman reported to be helpful—for his cold, headache, and foot pain. Any delay did not result in serious harm in light of (1) Dr. Weisner's conclusion that the foot pain was attributable to pre-existing, non-specific neuropathy, not caused by the temporary conditions in the hard cell,[4] and (2) no evidence that the cold and headache persisted or worsened. See Farmer,

---

[4] Outside of (1) an article on trench foot, which no evidence suggests a doctor diagnosed him with, and (2) a physician's letter stating that Freeman has peripheral neuropathy, similarly unhelpful because the physician does not indicate that his hard-cell stay caused the neuropathy, Freeman produced no evidence to contest Dr. Weisner's opinion that Freeman suffered from pre-existing neuropathy. Additionally, the evidence does not indicate, as Freeman argues, that Dr. Weisner's diagnosis concerned only his right foot.

511 U.S. at 834.  Because Freeman received Dr. Weisner's attention, the non-medical correctional officers cannot have been deliberately indifferent to a serious risk related to lack of proper medical care.  See Spruill, 372 F.3d at 236.

Regarding Freeman's mail, the record reflects that it was only temporarily withheld.  This temporary restriction was reasonably related to the prison's penological interest in limiting the items available to him while he was potentially at risk of suicide, see Thornburgh v. Abbott, 490 U.S. 401, 413 (1989), and Freeman did not indicate that the mail interruption injured his litigation efforts, see Lewis v. Casey, 518 U.S. 343, 349 (1996).  Indeed, he points to no evidence that denial of any amenities, even if unpleasant, caused him harm.  See, e.g., Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996) (per curiam) (recognizing possible unconstitutional prison condition where officials denied toothpaste allegedly resulting in gum damage and tooth decay); Knight v. Armontrout, 878 F.2d 1093, 1096 (8th Cir. 1989) (holding that 13-day deprivation of recreation was not unconstitutional); Harris v. Fleming, 839 F.2d 1232, 1234–35 (7th Cir. 1988) (holding five-day denial of toilet paper and 10-day deprivation of soap insufficient to state Eighth Amendment claim where prisoner suffered no physical harm).

Freeman's alleged lack of adequate clothing combined with cold exposure is the only deprivation potentially rising to a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 304 (1991).  Freeman and Appellees point to conflicting evidence regarding the temperature of his cell and the amount of clothing he received.  Assuming conditions were as harsh as Freeman described, the evidence nevertheless does not show that

10

Appellees demonstrated the requisite mental culpability by failing to respond to his complaints. See Farmer, 511 U.S. at 834. While Freeman claimed that he repeatedly told Appellees about the cold and its effect on his feet and health, it is undisputed that he received medical attention and that there were no complaints of heating malfunction in the other cells and common areas in his housing unit served by a single HVAC system. There is thus insufficient evidence to support a finding that nonmedical staff in that unit knew of and disregarded a substantial risk that Freeman would be seriously harmed by cold exposure. See Farmer, 511 U.S. at 837.

As for the medical personnel implicated in Freeman's claim, his medical records suggested that neuropathy made his feet more intolerant of cold temperatures. The Eighth Amendment, however, does not guarantee comfortable incarceration, see Rhodes, 452 U.S. at 349, and, as we have explained, Freeman marshaled insufficient evidence showing that significant harm was likely or occurred. See Farmer, 511 U.S. at 834. Moreover, regardless of his individual sensitivity, a reasonable factfinder could not conclude, based on the circumstances as Freeman described them, that he was exposed to cold conditions of sufficient severity and duration to objectively amount to an "extreme deprivation." See Hudson, 503 U.S. at 9; see, e.g., Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999) (holding that 17-hour outdoor confinement without any protective clothing or shelter from extreme wind and cold might be an unconstitutional deprivation); Dixon v. Godinez, 114 F.3d 640, 642–44 (7th Cir. 1997) (holding summary judgment to be inappropriate where undisputed evidence showed that prisoner was kept for multiple

11

winters in 40-degree, ice-coated cell). Accordingly, the District Court did not err in entering summary judgment against this claim. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 322.

For the foregoing reasons, we will affirm the judgment of the District Court.