# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41343
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2014

Lyle W. Cayce
Clerk

ELMER COX,

Plaintiff - Appellee

v.

JIM KAELIN, Individually,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CV-339

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

PER CURIAM:*

Elmer Cox, a former employee of the Nueces County Sheriff's Department, brought suit pursuant to 42 U.S.C. § 1983 against Jim Kaelin, the Sheriff of Nueces County, Texas, asserting that Kaelin violated his First Amendment rights. Cox alleges that Kaelin retaliated against him in response to his support for Kaelin's opponent in the 2012 race for Nueces County Sheriff and his involvement in the political process, in violation of his First

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-41343

Amendment rights to free speech and association.  The district court denied Kaelin's motion to dismiss, in which he asserted that Cox had failed to state a claim on which relief could be granted and raised the defense of qualified immunity.  Kaelin brings this interlocutory appeal of that judgment.  For the reasons that follow, we AFFIRM the judgment of the district court.

## BACKGROUND

### I.

In Cox's Fifth Amended Complaint, he alleges the following:

Prior to his termination, Cox had been employed by the Nueces County Sheriff's Department for over twenty years.  During the last ten years of his employment, he had served as the President of the Nueces County Sheriff Officers' Association, a Political Action Committee ("PAC").  In early May 2012, Kaelin—who was the Sheriff of Nueces County at the time—became upset that Thomas Burnside—who was employed by the Sheriff's Department and was a chairman of the PAC—began supporting Kaelin's opponent in the upcoming election.  The PAC itself, as well as Cox, also seemed to be supporting Kaelin's opponent, which apparently also upset Kaelin.

Sometime around May 15, 2012, Kaelin advised Cox that he should remove Burnside as a chairman of the PAC, in an apparent attempt to sway the PAC to support his candidacy.  Kaelin informed Cox that Burnside was going to be transferred to a position working in the Nueces County Jail, which he reportedly characterized as a demotion.  Kaelin threatened the same action against Cox, who at the time had been working on a task force for the U.S. Drug Enforcement Administration ("DEA"), should he ignore Kaelin's request to remove Burnside from his chairmanship.  Kaelin presented Cox with an ultimatum, stating he had until May 18, 2012 to respond to Kaelin's request.  Cox thereafter suspended the PAC for a short period of time in order to determine his course of action and to fill vacancies.  However, Cox reinstated

No. 13-41343

the PAC, which resumed its activities and held a meeting sometime around May 28, 2012.

On May 31, 2012, Cox was summoned into his supervisor's office, where he was told to call Kaelin on his cell phone. During the phone conversation, Kaelin allegedly became very upset, accused Cox of lying to him, and remarked, "Remember what I said I was going to do?" Kaelin thereafter reassigned Cox to a position in the jail, giving him 48 hours to vacate his position on the DEA Task Force. Cox characterizes this reassignment as a demotion. As a result of his transfer to the jail, Cox's vehicle was taken away, including the gas, mileage, and insurance benefits that came with it. In addition, Cox was no longer eligible for overtime pay, which amounted to over $10,000 per year. Cox was initially assigned to work the "graveyard shift," which encompasses early morning hours, and remained in that position for an extended period of time.

On March 28, 2013, Cox's employment with the Nueces County Sheriff's Department was terminated. Cox presumes that his employment was terminated due to his dissemination of a recorded conversation, wherein Kaelin threatened an officer who has since resigned from his position. At the time, Cox was working in the jail along with Burnside and another employee who apparently was previously assigned to the DEA Task Force, but who was also reassigned by Kaelin to jail duty for political-related reasons.

Cox avers that his involvement with the PAC, Burnside, or the election was in no way associated with his employment, and he did not discuss these matters during work hours. Cox asserts that his involvement with the political process and his known support for Kaelin's opponent in the upcoming election were the causes of his demotion to a position in the jail, as well as his eventual termination.

3

No. 13-41343

## II.

Cox then filed this § 1983 action in federal court, naming both Nueces County, Texas, a municipality, and Kaelin, individually, as defendants. Cox asserted that the defendants maintain a pattern or practice of depriving persons of their First Amendment rights, and that defendants retaliated against him in violation of the First Amendment because he engaged in free speech and association in regards to the political process.

In response, Kaelin filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for a failure to state a claim upon which relief can be granted, in addition to raising the defense of qualified immunity. In support of this motion, Kaelin argued that: (1) Cox's pleadings were conclusory and did not meet the necessary pleading standard to survive a motion to dismiss; (2) Cox had not pleaded a policy on which his claim was based; (3) Cox had not pleaded sufficient facts to support a claim of retaliation for engaging in conduct protected by the First Amendment; and (4) Cox's pleadings failed to negate Kaelin's qualified immunity defense. The matter was referred to a United States Magistrate Judge, who found that Cox had pleaded sufficient facts to support all of the required elements of a First Amendment retaliation claim and had pleaded sufficient facts to negate Kaelin's qualified immunity defense at the motion to dismiss stage. The Magistrate Judge further found that the issue of whether there was a practice or policy violative of the First Amendment was not relevant to the cause of action against Kaelin. The Magistrate Judge therefore recommended that Kaelin's motion to dismiss be denied. The district court thereafter overruled all of Kaelin's objections to the Magistrate Judge's recommendation, adopted its findings and conclusions, and denied Kaelin's motion to dismiss. Kaelin then filed a timely notice of appeal.

No. 13-41343

## DISCUSSION

### I.

In his brief, Cox asserts that this Court lacks jurisdiction to review the district court's denial of Kaelin's motion to dismiss, arguing that the district court did not reject Kaelin's defense of qualified immunity, but rather made a "preliminary determination" that Cox had pleaded sufficient facts that, if proven, would negate Kaelin's qualified immunity defense. However, a district court order denying a government official's claim of qualified immunity is immediately appealable under the collateral-order doctrine, provided "it turns on an issue of law." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). A district court order ruling on the sufficiency of the pleadings on the basis of qualified immunity "turns on an issue of law," as "evaluating the sufficiency of a complaint is not a 'fact-based' question of law." *Id.* at 674. Therefore, the denial of the motion to dismiss in this case is "an order rejecting qualified immunity at the motion-to-dismiss stage of a proceeding," which gives this Court jurisdiction to review that order pursuant to the collateral-order doctrine. *Id.* at 672. Our jurisdiction in this case is not limited to reviewing the rejection of the qualified immunity defense; we also have jurisdiction to review whether the pleadings sufficiently state a claim upon which relief can be granted. *Id.* at 673 (holding that the Court of Appeals had jurisdiction to review the sufficiency of the pleadings because "the sufficiency of respondent's pleadings is both inextricably intertwined with and directly implicated by the qualified immunity defense" (internal quotation marks and citations omitted)).

### II.

At the outset, Kaelin complains generally that the Magistrate Judge relied on matters outside of the pleadings in denying his motion to dismiss; namely, Kaelin asserts that the Magistrate Judge relied on the pleadings from a separate action against Kaelin. Kaelin argues that this is reversible error

without any further elaboration. However, "federal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss," so long as the court does not rely on those matters when deciding the motion. *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir.1994)). If the Magistrate Judge did in fact rely on pleadings from a separate case, the district court "should have converted the motion to dismiss into a motion for summary judgment, given the parties notice, and then considered all of the evidence presented." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 539 (5th Cir. 2003). "Only if it appears that the district court *did* rely on matters outside the pleadings should an appellate court treat the dismissal as a summary judgment." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 283 (5th Cir. 1993) (emphasis in original). There is nothing in the Magistrate Judge's Memorandum and Recommendation to suggest that the Magistrate Judge placed any reliance on facts outside the pleadings, including those alleged by Kaelin, in arriving at his conclusions; all of the Recommendation's findings are fully supported by the pleadings themselves. Further, this Court must give credence to the district court's explicit statement that the Recommendation "is based strictly on the pleadings." *See id.* (citing *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413, 414-15 (5th Cir. 1980)). Therefore, the district court committed no error and the Court will review the denial of the motion to dismiss solely on the basis of the pleadings.

## III.

We review the district court's denial of a motion to dismiss a complaint on the basis of qualified immunity de novo. *Atteberry v. Nocono Gen. Hosp.*, 430 F.3d 245, 252 (5th Cir. 2005). "In applying this standard, we accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted).

No. 13-41343

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements will not do." *Id.* (internal quotation marks, brackets, and citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted).

In order for a public employee to recover for a free speech retaliation claim, the plaintiff must satisfy four elements: "(1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and

7

(4) the plaintiff's speech must have motivated the defendant's actions." *Finch v. Fort Bend Indep. School Dist.*, 333 F.3d 555, 563 (5th Cir. 2003).

Cox has pleaded a First Amendment retaliation claim with sufficient facts to render it plausible on its face. It is plausible from the facts Cox alleges that his reassignment to a position in the jail, as well as his discharge, were adverse employment decisions. "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (1998). Cox's alleged discharge is clearly an adverse employment decision. *Id.* It is also plausible that his reassignment to the jail was an adverse employment decision, as he alleges that Kaelin himself referred to Burnside's reassignment to the jail as a demotion. *See id.* This Court has previously held that transfers to jail duty, even without a decrease in pay, can be adverse employment decisions because "jobs in the jail are not as interesting or prestigious as jobs in the law enforcement section." *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992). We made that finding only after reviewing the evidence presented at trial, and thus we can only make such a finding in this case after further facts have been adduced. However, it is certainly plausible that a position in the jail is less prestigious or interesting than Cox's previous position on a DEA task force. Thus, it is plausible from the facts alleged, including the loss of various benefits, that Cox's reassignment to the jail was indeed an adverse employment decision.

Regarding the second element of a First Amendment retaliation claim, we must determine whether it is plausible from the pleadings that Cox "spoke as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The first step of this inquiry questions whether Cox engaged in First Amendment speech as a citizen or in his role as a public employee. *See Lane v. Franks*, 134 S. Ct. 2369, 2378-80 (2014). It is clear that Cox did not

participate in the PAC and support for Kaelin's opponent in the course of his ordinary duties as a public employee; on the contrary, Kaelin specifically pleaded that he never discussed his involvement with the PAC or the upcoming election during work hours. Thus, it is clear that Cox engaged in these activities as a citizen. His role as a citizen is impacted neither by the relationship between the PAC—which is an association of sheriff officers—and his employment as a deputy sheriff, nor by the fact that he was supporting the opponent of his superior officer in an upcoming election, as "the critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 2379.

Next, we must determine whether the speech involved a matter of public concern. *See id.* at 2380. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (internal quotation marks omitted). "The inquiry turns on the 'content, form, and context' of the speech." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)). The content—support for Kaelin's opponent—and form—participation in a PAC—of the speech at issue clearly support the notion that it involved matters of public concern, as we have previously held that "there can be no question that . . . associating with political organizations and campaigning for a political candidate[] related to a matter of public concern." *Vojvodich v. Lopez*, 48 F.3d 879, 885 (5th Cir. 1995). The context of the speech, insofar as it occurred in the midst of an upcoming local election, bolsters the conclusion that Cox's speech involved a matter of public concern. Kaelin argues that Cox has not specifically pleaded any facts that suggest he had actually engaged in verbal speech, and that this omission belies any claim that

Cox engaged in protected speech. However, we have previously held that political associations qualify as speech under the First Amendment, and thus Kaelin's argument is meritless. *See Steadman v. Texas Rangers*, 179 F.3d 360, 367 (5th Cir. 1999) (stating that verbal enunciation of political views is not required to receive First Amendment protection; political association is sufficient in itself). Therefore, it is plausible from the facts alleged that Cox engaged in speech in the role of a citizen on matters of public concern.

Kaelin further argues that the district court erred in not conducting a balancing analysis, weighing Cox's interest in commenting on matters of public concern against the defendant's interest in promoting efficiency in the workplace, in order to determine the sufficiency of the pleadings in regards to the third element. Kaelin cites *Kennedy v. Tangipahoa Parish Library*, 224 F.3d 359 (5th Cir. 2000), among various other authorities, in support of the proposition that such a balancing inquiry must be made at the motion to dismiss stage of a proceeding. However, *Kennedy* explicitly opposes this assertion, stating, "The third element, being the factually-sensitive balancing test that it is, implicates only the summary judgment, not failure to state a claim, analysis." *Kennedy v. Tangipahoa Parish Library*, 224 F.3d 359, 366 n.9 (5th Cir. 2000) (abrogated on other grounds by *Twombly*, 550 U.S. at 563)). Therefore, such a balancing inquiry is not warranted at this stage of the proceedings, and it suffices that Cox's pleadings, in which he avers he did not discuss his political affiliations at work, render it plausible that his interest in commenting on matters of public concern outweighed Kaelin's interest in promoting efficiency in the workplace.

Cox has also pleaded sufficient facts to support his claim that his transfer to the jail and subsequent termination were motivated by his political activity. Cox specifically pleads that Kaelin threatened a transfer to the jail should Cox ignore his request to remove Burnside as chairman of the PAC.

No. 13-41343

Cox additionally pleads that Kaelin referenced that previous threat in the phone call during which Kaelin actually transferred Cox to the jail. Additionally, Cox pleads that his support for Kaelin's opponent was "known," and thus it is plausible that his political activity and "known support" for Kaelin's opponent motivated his eventual termination, aside from Cox's further claim that his termination was presumably due to the dissemination of a recording. Kaelin argues that the ten-month lapse of time between Cox's transfer and his termination undermines any claim that his termination was motivated by his political activity. However, Kaelin's argument presupposes that Cox's political activity and support for Kaelin's opponent ceased upon being reassigned to the jail. The pleadings support the inference that Cox's political activity continued following his reassignment, and thus it is plausible that his termination was also motivated by his political activity. Whether Cox's political activity did indeed continue following his transfer is a question better suited for determination at a later stage of the proceedings. Therefore, it is plausible from Cox's pleadings that both his transfer to the jail and subsequent termination were motivated by his political activity.

Accordingly, Cox's complaint "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face," as it is plausible from the complaint that Cox can succeed on all the elements of a First Amendment retaliation claim, and it therefore withstands Kaelin's motion to dismiss. *Iqbal*, 556 U.S. at 678.

## IV.

Regarding Kaelin's claimed defense of qualified immunity, he argues that a heightened pleading standard applies when the defense of qualified immunity is asserted, relying on *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995). Kaelin's argument, however, misreads this Court's opinion in that case. In *Schultea*, we held that "a plaintiff suing a public official under § 1983 [must]

file a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). We further held that a district court "may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity." *Id.* at 1433-34. The power to order such a detailed reply is based on the authority of Federal Rule of Civil Procedure 7, and was not derived from the heightened pleading standards espoused in Federal Rule of Civil Procedure 9(b). *Id.* The district court, in its discretion, did not insist that Cox file such a reply, as it found that he had met his burden to negate the defense of qualified immunity because he had alleged sufficient facts in the short and plain statement that *Schultea* initially requires. We review that decision de novo. *Atteberry*, 430 F.3d at 252.

In order to negate the defense of qualified immunity, Cox must plead sufficient facts to make it plausible that Kaelin's conduct: (1) violated a "clearly established federal constitutional right;" and (2) was not "objectively reasonable in light of clearly established law." *Nunez v. Simms*, 341 F.3d 385, 387 (5th Cir. 2003). The law is clearly established that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment Rights. More specifically, the Supreme Court has consistently held that governmental officials are forbidden from discharging public employees for their political affiliations. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990); *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976). Further, we have held that "[t]he law was established clearly enough in this circuit [as far back as] January 1988 that a reasonable officer should have known that if he retaliated against an employee for exercising his First Amendment rights, he could not escape liability by demoting and transferring the employee rather than discharging him." *Click*, 970 F.2d at 111. Kaelin argues, citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011), that

these statements of law are impermissibly general and thus do not constitute clearly established law. This argument, wherein Kaelin attempts to equate the fairly specific principle barring the discharge or demotion of public employees for exercising their First Amendment rights with the broad notion "that an unreasonable search or seizure violates the Fourth Amendment," which the Court in *al-Kidd* cited as an overly general proposition, is, at best, baseless. Therefore, it is plausible from the facts alleged that Kaelin violated a clearly established constitutional right and his conduct was objectively unreasonable. Accordingly, on the face of the pleadings, Cox has negated Kaelin's qualified immunity defense for the purposes of this stage of the proceedings.

## CONCLUSION

For the foregoing reasons, the district court's denial of Kaelin's motion to dismiss is AFFIRMED.