# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31114

United States Court of Appeals
Fifth Circuit

**FILED**
July 14, 2015

Lyle W. Cayce
Clerk

KEITH HARDESTY,

      Plaintiff - Appellee

v.

KENNY COCHRAN; OLLIE L. "JOHNNY" JOHNSON, III; WATERWORKS DISTRICT #4 OF WARD FOUR; OCCIE NORTON,

      Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:13-CV-293

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellee Keith Hardesty ("Hardesty") brought a First Amendment retaliation claim against Defendants-Appellants pursuant to 42 U.S.C. § 1983.[1] The individual defendants moved for summary judgment and asserted the defense of qualified immunity. The district court denied the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Hardesty also raised other claims, which the district court dismissed. Those claims are not relevant to this interlocutory appeal.

## No. 14-31114

summary judgment motion. The individual defendants now appeal that order. We affirm.

I.

The relevant facts, viewed in the light most favorable to Hardesty, are as follows:

Hardesty worked as the plant manager for Defendant Waterworks District No. 4 of Ward Four (the "District"). The District is a political subdivision of the State of Louisiana that provides water service to an unincorporated area of Calcasieu Parish outside of the City of Westlake. A board of five commissioners (the "Board") governs the District. Three of the Board's members, Occie Norton, Kenny Cochran, and Ollie L. "Johnny" Johnson III, are named defendants in this suit (the "Board Defendants"). At the time of the events relevant to this case, the Board also had another member, Richard Hebert ("Hebert"), who is not a defendant in this suit, as well as one vacancy.

Hardesty took a vacation in February 2011. When he returned, he heard from the District's consulting engineer that the Board was considering allowing the adjacent city of Westlake to annex the District. By the time Hardesty learned of the Board's proposal, some, but not all, of the District's customers were already aware of the proposal.

Hardesty disfavored the annexation proposal because he believed that "the system, if owned by the City of Westlake, would not efficiently furnish" water services to its customers. Moreover, he believed that the annexation would violate various laws. Thus, Hardesty felt duty-bound to inform the community about the Board's plans. Accordingly, Hardesty told several of the District's customers about the annexation proposal. Hardesty also advised customers to attend Board meetings and object to the annexation plan.

No. 14-31114

As a result, several dozen customers began regularly attending Board meetings and voicing their objections to the annexation proposal. Ultimately, the city of Westlake never annexed the District.

The Board Defendants told Hardesty at its April 12, 2011 meeting that they were displeased by his decision to inform the District's customers about the annexation plan. Accordingly, the Board voted in favor of a motion to terminate Hardesty if he engaged in "any other defiant acts." By "defiant acts," the Board was referring solely to Hardesty's communications with the District's customers.

On April 18, 2011, the Board voted to give every employee of the District a raise except Hardesty. Hebert moved at a subsequent Board meeting to reinstate Hardesty's raise and make it retroactive, but the Board Defendants defeated that motion.

At the January 16, 2012 Board meeting, Defendant Johnson moved to terminate Hardesty's employment "due to insubordination and defiance." The Board Defendants voted in favor of the motion, with only Hebert voting against.

Hardesty sued Defendants-Appellants in state court, alleging that they retaliated against him for exercising his free speech rights under the First Amendment. Specifically, Hardesty alleges that the Board Defendants terminated him because he told customers about the annexation plan.

Defendants-Appellants removed the case on federal question grounds. The Board Defendants then moved for summary judgment on Hardesty's First Amendment retaliation claim, asserting qualified immunity. The district court denied the motion. The Board Defendants now appeal the district court's interlocutory order denying their qualified immunity defense.

3

No. 14-31114

II.

"Although a denial of summary judgment is typically unappealable, defendants have a *limited* ability to appeal a denial of qualified immunity under the collateral order doctrine."[2] This Court has jurisdiction over such an interlocutory appeal only to the extent that the district court's order denying summary judgment turns on an issue of law.[3]

"Our court does not conduct a typical *de novo* review for an interlocutory appeal of a denial of summary judgment on qualified immunity grounds."[4] "Where the district court has found that a material issue of fact exists, we have jurisdiction to review the *materiality*, but *not* the *genuineness*, of the factual dispute."[5] "This court must 'accept the plaintiff's version of the facts as true' and may review *de novo* only the purely legal question of whether 'the district court erred in concluding as a matter of law that officials are not entitled to qualified immunity on that given set of facts.'"[6] Thus, to the extent Defendants challenge "the district court's assessment of the facts established by or inferable from the evidence," the Court must dismiss the appeal.[7]

Whether a public employee's speech is entitled to First Amendment protection is a legal question properly decided at the summary judgment phase.[8]

---

[2] *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 467 (5th Cir. 2014) (emphasis in original).

[3] *Charles v. Grief*, 522 F.3d 508, 511 (5th Cir. 2008) (citing *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)).

[4] *Cutler*, 767 F.3d at 469 (citing *Kinney*, 367 F.3d at 348).

[5] *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)) (emphasis added).

[6] *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (quoting *Kinney*, 367 F.3d at 347-48) (brackets omitted).

[7] *Palmer v. Johnson*, 193 F.3d 346, 354 (5th Cir. 1999).

[8] *Charles*, 522 F.3d at 513 n.17 (citing *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 691-94 (5th Cir. 2007)).

No. 14-31114

III.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[9] "To determine whether an official is entitled to qualified immunity, the court asks (1) whether the plaintiff has alleged a violation of a constitutional right, and (2) whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident."[10] The plaintiff bears the burden of negating the qualified immunity defense once a defendant has properly raised it.[11]

IV.

We first consider whether the summary judgment record contains sufficient evidence to support the inference that the Board Defendants violated Hardesty's First Amendment rights. Viewing the evidence in the light most favorable to Hardesty and deferring to the district court's judgment regarding the genuineness of factual disputes in the record, we conclude that it does.

Although public employees do not wholly relinquish their free speech rights by virtue of accepting governmental employment, the First Amendment nonetheless permits government employers to exercise a degree of control over their employees' words and actions.[12] Thus, to establish a *prima facie* case for First Amendment retaliation, a public employee must show that:

---

[9] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[10] *Charles*, 522 F.3d at 511 (quoting *Connelly v. Tex. Dep't of Criminal Justice*, 484 F.3d 343, 346 (5th Cir. 2007)).

[11] *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

[12] *Phillips v. City of Dallas*, 781 F.3d 772, 776 (5th Cir. 2015) (citing *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014); *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

No. 14-31114

(1)    He suffered an adverse employment action;

(2)    He spoke as a citizen, rather than pursuant to his official job duties;

(3)    He spoke on a matter of public concern;

(4)    His interest in the speech outweighed the government's interest in the efficient provision of public services; and

(5)    His speech precipitated the adverse employment action.[13]

Defendants do not dispute that Hardesty has created a genuine issue of material fact as to elements (1), (3), and (4). Defendants primarily argue that Hardesty's claim fails because he spoke pursuant to his official job duties, rather than as a citizen. Defendants also contend that Hardesty engaged in misconduct that justified his termination. We will address each issue in turn.

A.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[14] Thus, we must first consider whether Hardesty spoke as a citizen, rather than as an employee, when he informed the District's customers of the Board's annexation proposal.

The Supreme Court has declined to articulate a comprehensive framework for determining whether and when a public employee is speaking

---

[13] *Wilson v. Tregre*, --- F.3d ----, 2015 WL 2457394, at *2 (5th Cir. May 22, 2015) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

[14] *Garcetti*, 547 U.S. at 421 (2006).

as a citizen.[15] Instead, the inquiry is practical and fact-intensive.[16] Nevertheless, courts have identified several factors relevant to that analysis.

First, if an employee's job responsibilities require him to engage in the speech in question, then the speech is not protected.[17] Thus, if the employer has commissioned the speech or compensated the employee to make the speech, then the speech clearly falls within the employee's official duties.[18]

The Court should also inquire whether the speech in question is "the kind of activity engaged in by citizens who do not work for the government."[19] If the speech has "no relevant analogue to speech by citizens who are not government employees," then it lacks First Amendment protection.[20]

Because "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, . . . the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes."[21] Nevertheless, a written job description may still be "instructive."[22]

Additionally, when an employee merely voices a grievance up the chain of command at his workplace, it is particularly likely that the employee is speaking pursuant to his official duties.[23] Where, by contrast, "a public employee takes his job concerns to persons outside the work place, . . . then

---

[15] *Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014) (citing *Garcetti*, 547 U.S. at 424).

[16] *See Garcetti*, 547 U.S. at 424.

[17] *Williams*, 480 F.3d at 693.

[18] *Garcetti*, 547 U.S. at 422.

[19] *Id.* at 423.

[20] *Id.* at 424.

[21] *Id.* at 424-25.

[22] *Gibson*, 773 F.3d at 671 (citing *Williams v. Riley*, 275 F. App'x 385, 389 (5th Cir. 2008)).

[23] *See Wilson*, 2015 WL 2457394, at *2; *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008).

No. 14-31114

those external communications are ordinarily not made as an employee, but as a citizen."[24] However, whether the employee directs the speech internally or externally is not alone dispositive.[25]

The fact that an employee gives a statement "in an unauthorized manner, or in contravention of the wishes of his superiors does not convert his statement . . . into protected citizen speech."[26]

Notably, it is not the *content* of the speech that matters, but rather the *role the speaker occupied when he said it*.[27] Therefore, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[28] Consequently, the First Amendment protects speech even when it "concerns information related to or learned through public employment."[29]

1.

The Board Defendants first argue that the district court erred by considering an affidavit describing Hardesty's job duties that he submitted in response to the Board Defendants' summary judgment motion. Hardesty testified at his deposition that he "fe[lt] like [he] had a responsibility . . . as the manager of the Water District" to inform the District's customers about the annexation proposal. Then, in his affidavit, Hardesty averred that telling the District's customers about the annexation plan was *not* part of his job duties.

---

[24] *Davis*, 518 F.3d at 313 (citing *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006)). *Accord Charles*, 522 F.3d at 514.

[25] *Gibson*, 773 F.3d at 670; *Williams*, 480 F.3d at 694 n.1 (citations omitted).

[26] *Nixon*, 511 F.3d at 499.

[27] *Davis*, 518 F.3d at 312 (citing *Williams*, 480 F.3d at 692).

[28] *Hurst v. Lee Cnty., Miss.*, 764 F.3d 480, 484 (5th Cir. 2014) (citing *Lane*, 134 S. Ct. at 2379).

[29] *Lane*, 134 S. Ct. at 2377, 2379.

No. 14-31114

The district court reconciled Hardesty's affidavit with his deposition testimony as follows:

> Hardesty's deposition testimony is susceptible to differing interpretations. One interpretation is that when Hardesty said he felt that he "had a responsibility" as the manager that he was referring to an official responsibility – a task to be completed in accordance with the requirements of his position. The other interpretation is that Hardesty was referring to a moral responsibility to inform the public arising from the unique access to knowledge and experience he had as a plant manager. The affidavit appears to be an attempt to clarify which of these interpretations is appropriate, and because of the ambiguity of the deposition testimony, the affidavit can be fairly considered as a supplement to that testimony. Therefore, finding the affidavit to be neither a sham nor so clearly contradictory as to warrant exclusion, the court will consider the affidavit in ruling on the defendants' motions for summary judgment.

The Board Defendants claim that Hardesty may not create a genuine dispute of material fact by submitting an affidavit that contradicts his earlier sworn deposition testimony.[30]

"This court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony."[31] However, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit

---

[30] This issue arguably involves "the district court's assessment of the facts established by or inferable from the evidence." *See Palmer*, 193 F.3d at 354. However, our precedent suggests that, even though this is an interlocutory appeal, we nevertheless have jurisdiction to consider whether the district court should have excluded Hardesty's affidavit from the summary judgment record. *See Mersch v. City of Dall., Tex.*, 207 F.3d 732, 734-35 (5th Cir. 2000) (holding that this Court has jurisdiction to "review the admissibility of evidence on appeal" in the context of an interlocutory appeal of an order denying qualified immunity).

[31] *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984)). *Accord Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (citations omitted).

when evaluating genuine issues in a motion for summary judgment."[32] An affidavit permissibly supplements earlier deposition testimony if it merely "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition."[33] By contrast, if the affiant "was thoroughly questioned" about the issue at the deposition and answered the questions "unequivocal[ly]," contradictory averments in the subsequent affidavit will not create a genuine dispute of material fact.[34]

We conclude, essentially for the reasons given by the district court, that Hardesty's affidavit clarified, rather than contradicted, his ambiguous deposition testimony. The district court was therefore allowed to consider the affidavit when ruling on the Board Defendants' summary judgment motion.

2.

Having dismissed the Board Defendants' argument that the district court improperly considered Hardesty's affidavit, we next conclude that the record evinces a dispute of material fact regarding whether Hardesty spoke as a citizen.

After reviewing the summary judgment record in its entirety, the district court concluded:

> [A]lthough Hardesty's job description lists "public relations with customers," this is not dispositive. While it is uncontroverted that Hardesty acted as a representative for the Water District in negotiating contracts, there is no evidence that making public statements was ordinarily within his duties. Furthermore, even if Hardesty's job functions ordinarily included public statements, this fact cannot be construed to mean that every communication with an individual who happened to be a customer of the Water

---

[32] *S.W.S. Erectors, Inc.*, 72 F.3d at 496 (citing *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).

[33] *Id.*

[34] *See Doe*, 220 F.3d at 386 (citing *Clark*, 854 F.2d at 766-67).

No. 14-31114

District would be pursuant to Hardesty's official duties – even if some of those conversations included information about his job or opinions on issues related to his job.

There is no indication that these comments were characterized or classified as official communications on behalf of the Water District. There is similarly no allegation that the statements by Hardesty were in furtherance of job performance of the Water District's interests. The comments were not made to all Water District customers, and Hardesty had a prior personal relationship with at least one of the individuals he spoke with. Therefore, Hardesty's speech was not within the course of his ordinary duties, and he was speaking as a citizen for purposes of determining whether this speech is entitled to protection under the Fourth [sic] Amendment.

Again, we have "jurisdiction to review the *materiality*, but *not* the *genuineness*, of the factual dispute[s]" identified by the district court.[35] We therefore take the district court's characterization of the facts as given.

The district court properly applied the law to those facts when concluding that Hardesty's speech was entitled to First Amendment protection. The court correctly concluded that the fact that Hardesty's job description listed "public relations with customers" is not dispositive.[36] The fact that Hardesty was not paid or ordered to inform customers of Board proposals that could adversely affect them suggests that he spoke as a citizen rather than pursuant to his job duties.[37] Although Hardesty communicated information concerning and obtained during the course of his employment, that does not deprive the speech of First Amendment protection.[38] The fact that Hardesty raised his grievances externally rather than internally further

---

[35] *Newman*, 703 F.3d at 761 (citing *Freeman*, 483 F.3d at 410) (emphasis added).
[36] *Garcetti*, 547 U.S. at 424-25.
[37] *See id.* at 422.
[38] *See Lane*, 134 S. Ct. at 2377, 2379.

indicates that he spoke as a citizen.[39] Likewise, discussing community affairs and advising members of the community to attend and speak out at board meetings is the sort of speech in which private citizens who do not work for the government frequently engage.[40] We therefore decline to disturb the district court's ruling on this issue.

## B.

The Board Defendants also argue that they lawfully fired Hardesty because he engaged in various acts of misconduct unrelated to his speech. The district court considered and rejected that argument. Per the district court:

> While the court does not question there were quite possibly myriad reasonable bases for terminating Hardesty's employment, none of those reasons were expressed in the basis for the motion to terminate his employment at the Board meeting. The issue is not whether Hardesty *could* have been disciplined for his actions, but whether he *would* have been disciplined if he had not engaged in protected speech.

Once again, we lack jurisdiction to review "the district court's assessment of the facts established by or inferable from the evidence;" we must take the district court's characterization of the evidence as given.[41] The Board Defendants are challenging the district court's assessment of the evidence of Hardesty's misconduct, so we have no jurisdiction to consider the Board Defendants' argument that they terminated Hardesty for reasons unrelated to his First Amendment activities.[42]

---

[39] *See Davis*, 518 F.3d at 313 (citing *Freitag*, 468 F.3d 528); *Charles*, 522 F.3d at 514.

[40] *See Garcetti*, 547 U.S. at 423-24 ("Employees who make public statements outside the course of performing their official duties retain some possibility of First Amendment protection because that is the kind of activity engaged in by citizens who do not work for the government.").

[41] *See Palmer*, 193 F.3d at 354.

[42] In an attempt to portray this issue as a purely legal question that this Court has jurisdiction to consider on interlocutory review, Defendants analyze Hardesty's alleged

No. 14-31114

In any event, even if we did have jurisdiction to consider the Board Defendants' argument, we would reject it. "[S]ummary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate."[43] As the district court correctly noted, although the record contains some evidence that Hardesty engaged in misconduct, it contains no evidence that the Board Defendants terminated Hardesty and denied him a raise for that reason.[44] Rather, all the evidence suggests that the Board terminated Hardesty solely because of his speech acts.


V.

Because Hardesty has demonstrated a dispute of material fact with respect to whether the Board Defendants retaliated against him for exercising his First Amendment rights, we must proceed to the "clearly established law" prong of the qualified immunity analysis.

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct."[45] "[A] defendant cannot be said to have violated a clearly established right unless the right's

---

misconduct through the lens of the "objective reasonableness"/"clearly established law" prong of the qualified immunity analysis, rather than the factual issue of causation. This is disingenuous. The misconduct evidence clearly concerns a purely factual issue: whether the Board terminated Hardesty for his speech or for some other reason.

[43] *Haverda v. Hays Cnty.*, 723 F.3d 586, 595 (5th Cir. 2013) (citing *Click v. Copeland*, 970 F.2d 106, 113-14 (5th Cir. 1992)).

[44] On two occasions, the Board did chastise Hardesty for regularly starting work at 5:00 A.M. instead of the normal 7:00 A.M. start time without the Board's approval, but the record contains no evidence that the Board subjected Hardesty to any other discipline for doing so. In any event, Defendants do not include that particular infraction in their list of violations that supposedly justify Hardesty's termination.

[45] *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)).

contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."[46]

In *Cutler v. Stephen F. Austin State University*, 767 F.3d 462 (5th Cir. 2014), we considered whether First Amendment retaliation principles regarding public employees were clearly established prior to 2010. We concluded that numerous Supreme Court and Fifth Circuit decisions gave the defendants clear warning that when a public employee engages in speech outside of his employment duties, and the employee directs his speech externally rather than within the chain of command, the employer may not discipline the employee for engaging in the speech in question.[47] The law was therefore clearly established when the Board Defendants took adverse employment actions against Hardesty in 2011 and 2012. The Supreme Court's recent decision in *Lane v. Franks*, 134 S. Ct. 2369 (2014) did not alter First Amendment jurisprudence in any way that would render the currently applicable law not clearly established under these facts.[48]

We therefore affirm the district court's order denying the Board Defendants qualified immunity. We remand the case to the district court for further proceedings.

AFFIRMED and REMANDED.

---

[46] *Id.* (citing *Ashcroft*, 131 S. Ct. at 2083-84).

[47] 767 F.3d at 471-73 (citing *Garcetti*, 547 U.S. 410; *Charles*, 522 F.3d 508; *Davis*, 518 F.3d 304; *Williams*, 480 F.3d 689).

[48] *See Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 737 n.7 (5th Cir. 2015) ("Despite recognizing that aspects of *Lane* 'appear to offer the prospect of new law,' we ultimately determined that, '*Lane* does not appear to have altered the standard for whether public employees speak pursuant to their official duties, but appears rather to be an application of *Garcetti*'s rule.'" (quoting *Gibson*, 773 F.3d at 668)); *Cox v. Kaelin*, 577 F. App'x 306, 313 (5th Cir. 2014) (per curiam) (holding, post-*Lane*, that "[t]he law is clearly established that a public employee may be neither discharged nor demoted in retaliation for exercising his First Amendment rights").